UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MEGAN B., | ) |
| | ) |
|       Plaintiff, | ) |
| v. | )   Case No. 4:23-cv-00535-CDL |
| | ) |
| LELAND DUDEK,[1] | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|       Defendant. | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (the "Commissioner") denying disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the Commissioner's decision.

I.    **Standard of Review**

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. § 423(d)(1)(A).

---

[1]    Leland Dudek is currently the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Dudek is substituted as Defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

## II.   Procedural History

On December 23, 2021, Plaintiff filed applications for Social Security Disability Insurance and Supplemental Security Income benefits. Plaintiff alleged that her disability began on January 21, 2020. She was 31 years old on the alleged onset date and 34 years old when the Administrative Law Judge (the "ALJ") issued the decision denying benefits. (R. 233, 243, 251). Plaintiff completed the 11th grade, and before her alleged disability, she worked as a casino drink server. (R. 50, 57).

The Commissioner denied Plaintiff's applications at the initial and reconsideration levels. Plaintiff then requested a hearing, and the ALJ held a telephone hearing on January 5, 2023. (R. 46-59). Testimony was given by Plaintiff and a vocational expert (VE). (*See* R. 48-56, 56-58).

At the hearing, Plaintiff testified that she is 5'6" tall and weighs 170 pounds. (R. 49). Plaintiff testified that her "normal weight" is approximately 130 pounds. She attributes her weight gain to the newly developed mental issues. (R. 50). Plaintiff's medical records indicated these mental issues consisted, in part, of severe depression disorder, generalized anxiety disorder, and panic disorder.

Plaintiff testified that her depression and anxiety impede her ability to leave the house, because she is "just embarrassed of [her]self." (R. 51). When Plaintiff leaves her home, she feels overstimulated, looked at, judged, and is constantly embarrassed. (R. 52). She testified that she experiences panic attacks approximately every other day, lasting about six hours each time. (R. 54). Plaintiff testified that her panic attacks make her heart rate increase to the point where she feels it is beating "a thousand miles an hour," she feels as if she is unable to breath and as if she were dying. (R. 53-54). During a panic attack, Plaintiff will go into her bathtub and continue there until it ends.

Plaintiff testified that, although she previously tended to the management of her home, she has stopped cooking and attending to the laundry. Rather, she typically spends her day lying in bed, crying. (R. 55-56). Plaintiff has consistently seen a doctor, monthly for the previous three years, regarding her alleged mental disability. She has received medical treatment and testified that she feels that her condition has neither worsened nor improved as a result of that treatment. (R. 52). Plaintiff has not attended either group or individual therapy. (R. 52- 53).

The ALJ issued a decision on April 13, 2023, finding Plaintiff not disabled and denying disability benefits. (R. 33). The Appeals Council denied Plaintiff's request for

review on October 6, 2023, which rendered the ALJ's decision the agency's final decision. Following the Appeals Council's denial, Plaintiff timely filed a Complaint in this Court. Accordingly, the Court has jurisdiction to review the ALJ's April 13, 2023 decision under 42 U.S.C. § 405(g).

### III.    The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ considers work activity. If the claimant is gainfully employed, the ALJ will find the claimant not disabled. *Id.* At step two, the ALJ considers the impairment's severity and duration. *Id.* At step three, the ALJ determines whether the medical impairment meets an appropriate listing and the appropriate residual functional capacity (RFC). *Id.* At step four, the ALJ finds whether, in light of the RFC, the claimant may return to her previous work. *Id.* If not, the ALJ moves to step five, determining whether at the claimant's RFC, age, education, and work experience, there are jobs available in significant numbers in the national economy the claimant can perform. *Id.*

The plaintiff bears the burden of establishing a prima facie case for steps one through four. *Grogan,* 399 F.3d at 1261. If the plaintiff's burden is met, "the burden of proof shifts to the Commission at step five to show that the claimant retains sufficient RFC to perform work in the national economy." *Id.*

Here, the ALJ determined at step one that Plaintiff met the insured status requirements through December 31, 2023, and had not engaged in substantial gainful activity since her alleged onset date of January 21, 2020. (R. 19). At step two, the ALJ found

that Plaintiff has the severe impairments of polyneuropathy, obesity, major depressive disorder, generalized anxiety disorder, and substance abuse. (20 C.F.R. §§ 404.1520(c) and 416.920(c)). (R. 20). At step three, the ALJ found the Plaintiff's combination of impairments do not meet or medically equal the severity of a Listing, specifically considering Listings 11.14, 12.04, and 12.06. The ALJ also addressed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. *Id.; see* 20 C.F.R. § 404 Subpt. P App'x 1. The ALJ found that Plaintiff has a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 21).

At step four, the ALJ determined that Plaintiff has the RFC "to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except with additional limitations":

> [Plaintiff] is able to lift and/or carry twenty pounds occasionally and ten pounds frequently. [Plaintiff] is able to sit, stand and/or walk up to six hours in an eight-hour workday. [Plaintiff] is able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. [Plaintiff] is unable to climb ladders, ropes, or scaffolds. [Plaintiff] is unable to perform work requiring exposure to unprotected heights. [Plaintiff] is able to perform simple and some detailed, but no complex tasks, limited to repetitive, routine and rote work. [Plaintiff] is able to perform work requiring occasional contact with coworkers and supervisors, with superficial and incidental contact with the general public, working with things rather than people. [Plaintiff] is able to maintain concentration, persistence, and pace for two hours before needing a fifteen minute break.

(R. 22). In support of this finding, the ALJ stated that he considered Plaintiff's hearing testimony, medical opinion(s), and prior administrative medical finding(s), including those

of Richard Schafer, D.O.; Angela Skousen, Doctor of Nursing Practice (D.N.P.); William Cooper, Ph.D.; and Ryan Jones, Ph.D. The ALJ found that Plaintiff is unable to perform any past relevant work. (R. 31).

Accordingly, the ALJ proceeded to step five. Plaintiff was a 31-year-old woman at the time of her alleged disability, in the category of "younger individual." (*Id*.) Based on the VE's testimony as to a hypothetical person with Plaintiff's age, education, and RFC, the ALJ found Plaintiff can perform the requirements of representative occupations including:

> ***Small product assembler***, light exertion, unskilled, specific vocational preparation (SVP) Level 2, Dictionary of Occupational Titles (DOT) # 706.684-022, with approximately 16,095 positions jobs existing in the national economy;
>
> ***Cleaner-housekeeping***, light exertion, unskilled, SVP 2, DOT # 323.687-014, with approximately 177,875 positions;
>
> ***Inspector and hand packager***, light exertion, unskilled, SVP 2, DOT # 559.687-074, with approximately 6,135 positions; and
>
> ***Bottle packer***, light exertion, unskilled, SVP 2, DOT # 920.685-026, with approximately 7,330 positions.

(R. 32). Accordingly, the ALJ found Plaintiff is not disabled at step five.

### IV.     Discussion

Plaintiff argues that the ALJ erred on two fronts. First, she asserts that the ALJ erred by selectively ignoring portions of the medical source statement of consultative examiner Dr. Cooper and failing to adequately explain how he weighed Dr. Cooper's opinion. Additionally, Plaintiff argues the ALJ failed to properly consider the medical source statements of Ms. Skousen.

### A. Dr. Cooper

Dr. Cooper performed a mental consultative examination ("CE") of Plaintiff on February 16, 2023. In a medical source statement bearing the same date, Dr. Cooper assessed Plaintiff as having a marked limitation in interacting appropriately with the public, meaning that her ability to function within those areas "independently, appropriately, effectively, and on a sustained basis is seriously limited." (R. 880-881). He opined that Plaintiff has moderate limitations in interacting appropriately with supervisors and coworkers; mild limitations in understanding and remembering complex instructions and carrying out complex instructions; and no limitations in understanding and carrying out simple instructions, making judgments on complex work-related decisions, and responding appropriately to work situations. (*Id.*).

The ALJ's decision recited these findings in a narrative, detailing Dr. Cooper's functional assessment and examination findings in relation to several areas of mental functioning. The decision noted that Plaintiff exhibited no more than a mild limitation in understanding, remembering, and carrying out complex instructions, appeared to be of average intelligence and performed adequately on most tests of cognitive functioning. (R. 31). Regarding interaction with others, the ALJ explained that Plaintiff's social judgment "appeared adequate" to Dr. Cooper, but that he also

> opined that [Plaintiff] was markedly limited in her ability to interact with the public, and moderately limited in her ability to interact appropriately with coworkers and supervisors. Dr. Cooper explained that [Plaintiff] experienced severe anxiety in social settings, and she avoided social interactions without being accompanied by her husband.

(*Id.*).

The ALJ explained that he found Dr. Cooper's opinions "persuasive, as they are supported by" Dr. Cooper's examination findings and consistent with other medical evidence in the record. (*Id*.). The ALJ noted that Dr. Cooper's report "support[s] the finding that [Plaintiff] is limited in her ability to work with the general public, and coworkers and supervisors to a lesser extent," and explained that the RFC determination "accounted for" those limitations. (*Id*.).

Plaintiff does not dispute that the ALJ's decision accurately related Dr. Cooper's medical source statement. However, Plaintiff argues that the ALJ "misunderstood" those findings in light of other statements Dr. Cooper made in a five-page narrative report accompanying his statement. In the narrative report, Dr. Cooper detailed Plaintiff's reported history and symptoms, summarized his observations on examination, and discussed his conclusions and diagnostic impressions. (*See* R. 875-879). Within the narrative, Dr. Cooper stated that, "[g]iven [Plaintiff's] moderate to severe social anxiety, she would likely have difficulty maintaining successful employment, particularly if she had to work in the presence of groups of people or the general public." (R. 879). He observed that, "[g]iven her anxiety and depression, her capacity to tolerate normal stress also appears below average." *Id*.

Under the Commissioner's binding regulations, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved" and to explain why the ALJ did not adopt a medical opinion that conflicts with the RFC assessment. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. However, as Plaintiff acknowledges, under the applicable regulations, a medical source's statement on an issue reserved to the Commissioner—such as "the issue of ability to work"—

8

is "inherently neither valuable nor persuasive." (Doc. 12 at 5); *see* 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3). As such, the regulations expressly exempt an ALJ from "provid[ing] any analysis about how [the ALJ] considered such evidence in [the ALJ's] determination or decision." 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3).

While Plaintiff argues that the ALJ "actually reject[ed] the opinion of Dr. Cooper without explanation," statements about the ultimate issue of disability are *not* medical opinions. 20 C.F.R. § 404.1513(a)(2) (defining medical opinion as "a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions in" specified functional abilities). Thus, the articulation requirements applicable to medical opinions do not apply to such statements. *See* 20 C.F.R. § 404.1520c.[2] Similarly, Dr. Cooper's observation that Plaintiff has a below-average ability to "tolerate normal stress" does not address what Plaintiff "can still do despite [her] impairments," and thus is not a medical opinion requiring articulation under the regulations. (R. 880); 20 C.F.R. § 1513(a)(2).

Plaintiff argues that the ALJ failed to address the "context" of Dr. Cooper's functional assessment, amounting to improper "cherry-picking" of evidence supportive of nondisability while ignoring conflicting evidence. (Doc. 12 at 6-7 (citing, *inter alia*, *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)). Again, however, a statement that is "inherently neither valuable nor persuasive," such as Dr. Cooper's statement regarding Plaintiff's employability, is not conflicting evidence that the ALJ is required to discuss. 20 C.F.R. §§ 404.1520b(c)(3);

---

[2] This exemption expressly applies even in the ALJ's discussion of a medical source opinion under § 404.1520c. *Id.*

*cf. Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)) ("[T]he ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.").

Plaintiff contends that the ALJ ignored four other "factors" cited in Dr. Cooper's report as evidence of "the severity of the totality of [Plaintiff's] conditions: (1) needs directions repeated; (2) marked restrictions in dealing with the public; (3) moderate limitation with coworkers and supervisors; [and] (4) severe anxiety in social settings and needs her husband. (Doc. 12 at 5). However, the ALJ's decision explicitly noted each of these findings in discussing Dr. Cooper's report. (*See* R. 31). The ALJ accounted for the relevant limitations he found with an RFC restricted to "occasional contact with coworkers and supervisors, with superficial and incidental contact with the general public, working with things rather than people." (R. 22; *see* R. 31).

Substantial evidence supports the ALJ's consideration of Dr. Cooper's CE findings, and there is no reversible error on that issue.

**B.   Ms. Skousen**

Plaintiff's treating nurse practitioner, Ms. Skousen, who is also identified in the record as an Advanced Practice Registered Nurse (APRN), completed checklist-style forms created by the Plaintiff's representative, including a "Mental Capacity Assessment" (R. 654-656) and "Physical Assessment" (R. 657-658), on January 20, 2022. Ms. Skousen's Mental

Capacity Assessment form indicated that Plaintiff has marked limitations in "[t]he ability to sequence multi-step activities," "to ignore or avoid distractions while working," "to sustain an ordinary routine and regular attendance at work," "to work a full day without needing more than the allotted number or length of rest periods," "to manage psychologically based symptoms," "to set realistic goals," and in all areas regarding interacting with others. (R. at 654-656). However, Ms. Skousen noted that the Plaintiff "is able to follow simple commands," can follow one- or two-step instructions to carry out a task, and can take appropriate cautions to avoid workplace hazards. (R. 654-655).

In the Physical Assessment, Ms. Skousen opined that Plaintiff could walk one block, sit for four hours, and stand/walk for three hours of an 8-hour workday, and would need 15-minute breaks every two hours. (R. 657). Ms. Skousen opined that Plaintiff's symptoms would "often" be severe enough to interfere with attention and concentration required to perform simple work-related tasks. (*Id.*). She also opined that Plaintiff would likely be absent from work more than four times per month—a limitation that would be work-preclusive, according to the VE's hearing testimony. (*Id.*; *see* R. 58-59).

The ALJ's decision must articulate how the ALJ considered the medical opinions or prior administrative medical findings from each medical source. 20 C.F.R. § 404.1520c(b)(1).[3] The most important factors for the ALJ to consider are supportability and consistency, and the ALJ's decision must explain how he considered those factors in

---

[3] For claims filed on or after March 27, 2017, such as the plaintiff's claim here, the Commissioner does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions." 20 C.F.R. § 404.1520c(a).

determining persuasiveness of a medical source's medical opinions or prior administrative medical findings. *Id*. § 404.1520c(b)(2).[4] Additionally, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7.

Here, the ALJ considered Ms. Skousen's opinions under § 404.1520c, concluding that the mental limitations opined were not persuasive, but that the physical limitations were somewhat persuasive. (R. 30-31). The ALJ's decision reflects a detailed consideration of Ms. Skousen's mental functional assessment, noting that she indicated marked limitations in the ability to sequence multi-step activities, ignore or avoid distractions when working, sustain an ordinary routine and regular attendance at work, work a full day without needing more than the allotted number or length of rest periods during the day, manage psychologically-based symptoms, set realistic goals, and "in all areas pertaining to interacting with others." (R. 30). The ALJ noted Ms. Skousen's finding of moderate limitation in areas related to judgment and decision-making, as well as Ms. Skousen's observations that Plaintiff is "anxious and struggle[s] with panic attacks." (*Id*.). The ALJ found these limitations unpersuasive, noting that there were no examination records accompanying Ms. Skousen's opinion, and that Plaintiff's treatment records with Dr. Schafer, which Ms. Skousen also attended, indicated that Plaintiff showed anxiety but no other significant mental symptoms and was "rarely in more than mild distress." (*Id*.). The ALJ found the opinion inconsistent

---

[4] The ALJ must also consider the medical source's relationship with the claimant, specialization, and other factors, but the ALJ's decision is not required to specifically address those additional factors. *Id*. § 404.1520c(c).

with the medical evidence of record, "particularly the examination findings of Dr. Cooper." (*Id.*). The ALJ also noted that Ms. Skousen "is not considered an acceptable medical source" and that the mental limitations she endorsed "appear out of the scope of practice." (*Id.*)

Plaintiff argues that the ALJ ignored or overlooked certain portions of Ms. Skousen's medical functional assessment. However, the ALJ's decision specifically noted the vast majority of the items Plaintiff contends were omitted. (*See* Doc. 12 at 8 (identifying areas of marked and moderate limitation and absenteeism noted in Ms. Skousen's opinions); *cf.* R. 30-31). For example, Plaintiff objects that the ALJ did not address Ms. Skousen's observation that Plaintiff has panic attacks and her opinion that Plaintiff would require four or more absences per month due to her impairments, but the ALJ's decision specifically addressed both issues. (R. 30).

To the extent the ALJ failed to recite any of the specific marked and moderate limitations noted on Ms. Skousen's assessment, Plaintiff has not shown any reversible error, as the ALJ is not required to discuss each finding in a medical source opinion. The Commissioner's regulations explain that "it is not administratively feasible for [the ALJ] to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(1). Thus, the ALJ is "not required to articulate how [the ALJ] considered each medical opinion or prior administrative medical finding from one medical source individually"; rather, the ALJ's decision should "articulate how [the ALJ] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis."

Here, the ALJ indicated that he considered both the physical and mental assessment forms completed by Ms. Skousen, discussed her opinions in detail, and articulated how he considered the opinions according to the required factors. Regrading mental functions, the ALJ found the degree of limitation indicated in Ms. Skousen's opinion was unsupported and inconsistent with the record as a whole. The ALJ found the physical functional assessment "somewhat persuasive," but only as to the degree of limitations specified in the RFC determination. (*Id.*). Plaintiff has not pointed to any portion of Ms. Skousen's opinions that is not reasonably addressed in the ALJ's explanation under § 404.1520c. (*See* R. 30-31).

The Court notes that the ALJ erroneously stated that Ms. Skousen is not an acceptable medical source, as Ms. Skousen is identified in the record as an APRN as well as a DNP (Doctor of Nursing Practice). (*See, e.g.,* R. 656, 672). An acceptable medical source includes "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice." 20 C.F.R. § 404.1502(a)(7). Therefore, as an APRN, Ms. Skousen is an acceptable medical source.

However, the error is not reversible because, as discussed above, the ALJ performed the requisite analysis on Ms. Skousen's opinions. *See Moua v. Colvin,* 541 Fed. Appx. 794, 798 (10th Cir. 2013) (quoting *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). The ALJ determined that Ms. Skousen's mental capacity assessment is not supported by her own examination findings, appears to be beyond the scope of her practice, and is inconsistent with other evidence, including the CE findings of Dr. Cooper. Moreover,

14

the ALJ found some mental and physical functional limitations supported by the record evidence, as reflected in the RFC limitations to simple work with some detailed tasks but no complex tasks and limited social interaction and to a restricted level of light work. Substantial evidence supports the ALJ's findings; accordingly, the ALJ's decision sufficiently addressed Ms. Skousen's opinions. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) (stating that on appeal, the court "reviews only the *sufficiency* of evidence, not its weight"); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (stating that the court may not reweigh evidence and "displace the agency's choice between two fairly conflicting views").

## V.  Conclusion

For the reasons set forth above, the ALJ's decision is consistent with the applicable legal standards and is supported by substantial evidence. Therefore, the decision of the Commissioner finding the plaintiff not disabled is **affirmed.**

**SO ORDERED** this 10th day of March, 2025.

Christine D. Little
United States Magistrate Judge